IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRYAN LANE PRATHER,<br><br>Defendant. | CR 25-08-BLG-SPW<br><br>ORDER |

Defendant Bryan Lane Prather moves to dismiss the 18 U.S.C. § 922(g)(1) charge against him under *District of Columbia v. Heller*, 554 U.S. 570 (2008), *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), and its progeny, arguing that § 922(g)(1) violates his Second Amendment right to possess firearms. (Docs. 24, 25). The Government opposes the motion. (Doc. 29).

The motion is ripe for review and for the following reasons, the Court denies Prather's motion.

**I.   Factual Background**

According to the Government, Prather was convicted of felony Driving Under the Influence in June 2021 and sentenced to serve a five-year commitment to the Montana Department of Corrections. (Doc. 29 at 2).

1

On September 21, 2024, law enforcement pulled Prather over in Laurel, Montana after receiving a call about an impaired driver entering the highway and after the on-duty officer observed Prather's driving—indicative of impairment. (*Id.*; Doc. 25 at 2). Ultimately, Prather was arrested and charged with felony Driving Under the Influence. (Doc. 29 at 2).

Subsequently, Laurel Code Enforcement towed Prather's truck to a vehicle junk yard. Code Enforcement employees observed firearms inside the truck, removed the firearms from the truck, and contacted Yellowstone County Sheriff's Office. (*Id.* at 3; Doc. 25 at 3). Law enforcement seized the firearms and Prather later admitted that he possessed the three firearms and ammunition found in his truck.

On January 16, 2025, a federal grand jury indicted Prather with the sole count of prohibited person of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). (Doc. 2).

## II.   Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) provides that a party may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits. A pretrial motion is proper when it involves questions of law rather than fact. *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). The Court has determined Prather's motion is appropriate for pre-

trial resolution because it solely involves a question of law. Prather challenges § 922(g)(1) as unconstitutional as applied to the facts of his case.

### III. Analysis

#### A. *Ninth Circuit Precedent*

After the Supreme Court issued its landmark ruling in *Bruen*, a Ninth Circuit three-judge panel found that § 922(g)(1) was unconstitutional as applied to a nonviolent felon defendant. *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024). At the time, *Duarte* was the most recent decision related to the constitutionality of § 922(g)(1) in the Ninth Circuit. However, in July 2024, the Ninth Circuit granted rehearing *en banc* in *Duarte* and vacated the panel's decision. 101 F.4th 657, *reh'g en banc granted, opinion vacated*, 108 F.4th 786 (9th Cir. Jul. 17, 2024). The Ninth Circuit heard oral argument on December 11, 2024.

While that decision was vacated, this Court repeatedly upheld § 922(g)(1)'s constitutionality under the Second Amendment. *E.g.*, *United States v. Doney*, CR 24-157-BLG, 2025 WL 1180361 (D. Mont. Apr. 22, 2025); *United States v. Howe*, CR 24-159-BLG, 2025 WL 933954 (D. Mont. Mar. 27, 2025); *United States v. Zitur*, CR 24-151-BLG, 2025 WL 460778 (D. Mont. Feb. 11, 2025); *United States v. Marquart*, CR 24-161-BLG, 2025 WL 460777 (D. Mont. Feb. 11, 2025); *United States v. Bulltail*, CR 22-86-BLG, 2023 WL 5458780 (D. Mont. Aug. 24, 2023); *United States v. Mitchell*, CR 24-58-BLG, 2024 WL 4542947, (D. Mont. Oct. 22,

3

2024), *appeal docketed*, No. 25-2665 (9th Cir. Apr. 25, 2025); *United States v. Hamblin*, CR 24-40-BLG, 2024 WL 4544089 (D. Mont. Oct. 22, 2024), *appeal docketed*, No. 22-2501 (9th Cir. Apr. 18, 2025).

Then, on May 9, 2025, the Ninth Circuit issued the *Duarte* opinion upholding the constitutionality of § 922(g)(1) under *Bruen* as to the defendant and other nonviolent felons. *United States v. Duarte*, No. 22-50048, 2025 WL 1352411 (9th Cir. May 9, 2025). Additionally, the Circuit Court did not overrule it's prior holding in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), which similarly upheld § 922(g)(1)'s constitutionality.

Though the ruling in *Duarte* would foreclose Prather's arguments, the Court recognizes that no Ninth Circuit opinion becomes final until the mandate issues[.]" *Carver v. Lehman*, 558 F.3d 869, 878 (9th Cir. 2009). The mandate has not been issued and is stayed pending application for writ of certiorari. If a petition is filed, the stay shall continue until the Supreme Court's final disposition. Consequently, the *Duarte* judgment is not final, and the opinion is not settled. Reliance on the opinion would be "a gamble." *Nat. Res. Defense Council, Inc. v. Cnty of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013). Therefore, the Court is free to consider the merits of the parties' arguments. *See id.*

///

///

4

B.   *Second Amendment Analysis*

Section 922(g)(1) states in pertinent part: "[i]t shall be unlawful for any person who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year," "to possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1).

The Second Amendment guarantees as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Bruen*, the Supreme Court found that the Second Amendment's plain text coupled with an historical analysis of the Nation's gun regulation traditions protects an individual's right to carry a handgun for self defense. *Bruen*, 597 U.S. at 17, 28–29. The Court rejected the means-end scrutiny tests previously applied by appellate courts, holding instead that courts must apply "[t]he test set forth in *Heller*" to "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26 (citing *Heller*, 554 U.S. 570).

Like other rights, Second Amendment rights are not unlimited. *Id.* at 21. The "ever-evolving 'history-and-tradition' test outlined in *Bruen* and modified" by the Court's decision in *United States v. Rahimi* "requires a two-step analysis to determine whether a law complies with the Second Amendment." *United States v.*

*Youngblood*, 740 F. Supp. 3d 1062, 1068 (D. Mont. July 1, 2024) (citing 602 U.S 680, 740–43 (2024) (Jackson, J., concurring)).

First, if "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. Second, to regulate protected conduct, the government must show that its regulation "is consistent with the Nation's historical tradition of firearm regulation." *Id*.

The parties make their respective arguments under the *Bruen* framework. However, the parties also address the merits of Prather's claim under *Vongxay*. Therefore, as a threshold matter, the Court will first address Second Amendment implications under *Vongxay* and then turn to the parties' arguments under *Bruen*.

   1.   *Section 922(g)(1) under* Vongxay

Prather asserts that *Vongxay* is irreconcilable with *Bruen* and should not be relied on. (Doc. 25 at 6). However, Prather offers no additional argument or support as to why *Bruen* effectively overruled *Vongxay*.

As correctly noted by the Government, "this Court is bound by Ninth Circuit precedent unless that precedent is 'effectively overruled,' which occurs when 'the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority." *United States v. Butts*, 637 F. Supp. 3d 1134, 1138 (D. Mont. 2022) (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003)). "The clearly irreconcilable requirement is a high standard." *Close*

*v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018) (quotation marks omitted). "[I]t is not enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit precedent." *Id.* (quotation marks omitted). "So long as the court can apply our prior circuit precedent without running afoul of the intervening authority it must do so." *Id.* (quotation marks omitted). Under this standard, the Court finds that *Vongxay* is not clearly irreconcilable with *Bruen*.

*Vongxay* did not apply the means-end scrutiny test rejected by *Bruen* which would render *Vongxay* clearly irreconcilable with *Bruen*. *See United States v. Bulltail*, CR 22-86-BLG, 2023 WL 5458780, at *2 (D. Mont. Aug. 24, 2023). Rather, *Vongxay* applied *Heller* "to conclude that the felon dispossession statute, § 922(g)(1), is constitutional because it is consistent with longstanding limitations on gun possession and because 'the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals).'" *Id.* (quoting *Vongxay*, 594 F.3d at 1118 (citing Don. D. Kates, Jr., *The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143, 146 (1986))).

The *Bruen* Court held that a court must apply "[t]he test that we set forth in *Heller*" and "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Bruen*, 597 U.S. at 56 (citing *District of Colombia v. Heller*, 554 U.S. 570 (2008)). Thus, "*Bruen* did not

7

overrule prior precedent regarding gun-ownership prohibition when the basis for the prohibition arose from the application of *Heller*." *United States v. Hamlin*, CR-23-08-H, 2023 WL 6481146, at *4 (D. Mont. Oct. 5, 2023).

Under this logic, the Court has denied § 922(g)(1) challenges since *Bruen* because the basis for the gun possession prohibition under *Vongxay* arose from the application of *Heller*. As before, this Court remains bound by Ninth Circuit precedent, and upon determining that *Vongxay* maintains its precedential value, finds § 922(g)(1) constitutional. *See Marley v. United States*, 567 F.3d 1030, 1038 (9th Cir. 2009) ("[A] decision that has been vacated has no precedential authority whatsoever." (internal citation omitted)).

Be that as it may, the Court recognizes that "*Bruen* effected a sea change in Second Amendment law." *Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1041 (4th Cir. 2023). Accordingly, the Court will consider Prather's as applied challenge under the *Bruen* framework.

    2.    *The* Bruen *Framework*

        a. *Plain Text*

The threshold question under *Bruen* is whether the Second Amendment applies to Prather and his conduct. Prather argues that his person and his conduct in possessing a firearm are protected under the Second Amendment's plain text. (Doc. 25 at 6). As for Prather's conduct in possessing a firearm, the Supreme Court, in

8

*Heller*, recognized an individual's right to possess firearms in common use for traditionally lawful purposes such as self defense within the home. 554 U.S. at 592, 627. According to the Government, Prather claims to have used the firearms for hunting purposes. (Doc. 29 at 3). Because hunting is lawful, the Court will assume without further analysis that Prather's right to possess firearms for hunting is a common use and covered by the plain text of the Second Amendment.

As for Prather's person, the Government argues that absent a ruling from a higher court, Montana district courts, including this Court, have determined that felons are not protected under the Second Amendment's text. (Doc. 29 at 6). The Government writes that the Second Amendment extends only to "law-abiding citizens." (*Id.*). Thus, the Government concludes a convicted felon is not included in "the people" contemplated by the Second Amendment and therefore, Prather falls outside the Amendment's protections.

District courts in the Ninth Circuit seem to agree that, under *Heller* and *Bruen*, the Second Amendment right is limited to law-abiding citizens, not felons. *See Butts*, 637 F. Supp. 3d at 1137–38 (holding that the Second Amendment is not extended to felons based on *Bruen*'s and *Heller*'s repeated references to "law-abiding citizens" and statements that felon dispossession statutes are "presumptively lawful"); *United States v. Roberts*, 710 F. Supp. 3d 658, 675–76 & n.157 (D. Alaska 2024) (collecting cases holding the same).

In contrast, other courts apply a "rights-based analysis," which asserts that "all people have the right to keep and bear arms but that history and tradition support Congress' power to strip certain groups of that right." *Roberts*, 710 F. Supp. 3d at 675 (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (J. Barrett, dissenting)); *see also United States v. Montes*, No. 1:23-cr-00182-1, 2024 WL 3904631, at *4 (N.D. Ill. Aug. 22, 2024) (holding that felons are within the "people" covered by the Second Amendment because *Heller*'s and *Bruen*'s discussions of law-abiding citizens' Second Amendment rights did not decide the question of the scope of the right and because "the people" covered by other constitutional rights only sometimes excludes felons).

As the matter is unresolved by the Ninth Circuit, the Court will assume without deciding that Prather is included in the "people" covered by the Second Amendment.[1] *See Roberts*, 710 F. Supp. 3d at 676–77 ("Given these disparate approaches to determining whether an individual's conduct is plainly covered by the Second Amendment, the Court assumes that the Second Amendment's plain text covers Roberts' conduct[.]").

/ / /

/ / /

---

[1] The *en banc* court in *Duarte* concluded that despite Duarte's status as a felon, he is one of "the people" who enjoys Second Amendment rights. *Duarte*, 2025 WL 1352411, at *8. Again, as no mandate has been issued, the Court will not rely on *Duarte* in its determination.

### b. *Historical Tradition of Firearm Regulation*

Because the Court presumes Prather's conduct is protected by the Second Amendment, the Government must "justify [§ 922(g)(1)] by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 at 17. The historical analysis requires courts to pay close attention to "[w]hy and how the regulation burdens the right." *Rahimi*, 602 U.S. at 692; *Bruen*, 597 at 29. When engaging in analogical inquiry, "[a] court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'applying faithfully the balance struck by the founding generation to modern circumstances.'" *Rahimi*, 602 U.S. at 692 (quoting *Bruen*, 597 U.S. at 29); *see also Bruen*, 597 U.S. at 30 (requiring the government to "identify a well-established and representative historical *analogue*, not a historical *twin*.") (emphasis in original). Specifically, "the government must prove that the firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 20. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

The Government argues that since *Heller*, the Supreme Court has repeatedly held that longstanding prohibitions on felons in possession of firearms are presumptively lawful. (Doc. 29 at 6–8 (citing *McDonald v. City of Chicago*, 561

U.S. 742 (2010); *United States v. Rahimi*, 602 U.S. 680 (2024); *United States v. Morales*, 24 Cr. 84, 2024 WL 3345982, at *2 (S.D.N.Y. July 8, 2024)).

In opposition, Prather emphasizes that it is the Government's burden to prove how and why historical Second Amendment regulations are relevantly similar to the prohibition contemplated by § 922(g)(1). Prather concludes that under *Heller*, *Bruen*, and *Rahimi*, his nonviolent felony conviction is unconstitutional as he does not pose a "credible threat" to the physical safety of another. (Doc. 25 at 10).

Here, the Court finds that historical analogues[2] for the prohibition on the possession of weapons by both nonviolent and violent felons exist and are well documented in the courts. *See Medina v. Whitaker*, 913 F.2d 152, 158 (D.C. Cir. 2019) (discussing the evidence of the "tradition and history" that demonstrates that felons, including "non-dangerous" felons, do not have a right to bear arms under the Second Amendment); *United States v. Ramos*, No. 2:21-cr-00395, 2022 WL 17491967, at *4–5 (C.D. Cal. Aug. 5, 2022) (discussing laws in existence at the founding that provide representative analogues to the felon in possession statute). Most of the Founding Era laws cited by courts restricted the possession of firearms

---

[2] "[C]onsideration is [ ] given to Justice Jackson's recent warning about the pitfalls of the *Bruen* methodology. Concurring in *Rahimi*, Justice Jackson cautioned: 'It is not clear what qualifies policymakers or their lawyers (who do not ordinarily have the specialized education, knowledge, or training of professional historians) to engage in this kind of assessment . . . *Bruen* also conscripts parties and judges into service as amateur historians, casting about for similar historical circumstances.'" *Youngblood*, 740 F. Supp at 1069 n.3 (quoting *Rahimi*, 602 U.S. at 745 n.3 (Jackson, J., concurring)).

by unvirtuous persons, which included felons who committed nonviolent crimes. *Medina*, 913 F.3d at 158–59 (describing how nonviolent crimes such as forgery and horse theft were felony crimes at the time of the Second Amendment ratification); *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010) ("[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm unvirtuous citizens." (cleaned up)); *Ramos*, 2022 WL 17491967, at *4 (discussing Founding Era laws that allowed for the dispossession of firearms from unvirtuous persons, which included common law felons).

This conclusion is affirmed by the Court's decisions in *Heller*, *McDonald*, *Bruen*, and *Rahimi*. In *Heller*, the Court wrote that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" 554 U.S. at 626. Two years later, in *McDonald*, the Court "repeat[ed] [its] assurances" that felon dispossession laws remain valid. 561 U.S. at 786. Then, in *Bruen*, the majority stated that its holding "was in keeping with *Heller*" and repeatedly used the term "law-abiding citizen" in reference to the scope of an individual's Second Amendment rights. 597 U.S. at 9, 29, 31, 38, 60, 70. In a concurring opinion in *Bruen*, Justice Kavanaugh, joined by the Chief Justice, "underscore[d]" that "the Second Amendment allows a 'variety' of gun regulations," and that nothing in the Court's opinion "'should be taken to cast doubt on

13

longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]'" *Id.* at 81 (quoting *Heller*, 554 U.S. at 626 n.26).

Finally, the Chief Justice in the *Rahimi* majority once again affirmed that "many . . . prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" 602 U.S. at 699; *see also United States v. Morales*, No. 24-cr-84, 2024 WL 3345982, at *2 (S.D.N.Y. July 8, 2024) (citing *Rahimi*, 602 U.S. at 697–98) (holding that the *Rahimi* majority's "discussion of the long history of firearm regulations prohibiting dangerous persons from possessing arms aligns with the conclusion of the courts above: that § 922(g)(1), limited as it is to adjudicated felons, is consistent with the nation's historical tradition of firearm regulation.").

Thus, unlike Prather's assertion, whether a defendant poses a credible threat to another or that his felony is nonviolent is immaterial under the § 922(g)(1) historical analysis. The weight of the relevant caselaw, historical evidence, and Supreme Court precedent demonstrates the constitutionality of 18 U.S.C. § 922(g)(1) regardless of the type of felony. Therefore, § 922(g)(1) is constitutional as applied to Prather and for these reasons, his motion to dismiss is denied.

/ / /

/ / /

/ / /

## IV. Conclusion

IT IS SO ORDERED that Defendant Bryan Lane Prather's Motion to Dismiss (Doc. 24) is DENIED.

DATED this 10th day of June, 2025.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge